UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KRISTEN KOHLER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

WHALECO, INC., a Delaware Corporation, d/b/a Temu; and DOES 1-10,

Defendants.

Case No.: 24-cv-00935-AJB-DEB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION; DENYING MOTION TO STAY DISCOVERY AS MOOT**

**(Doc. No. 8)**

Before the Court is Defendant Whaleco Inc.'s ("Whaleco" or "Defendant") motion to compel arbitration. (Doc. No. 8.) Plaintiff Kristen Kohler ("Plaintiff") opposes the motion. (Doc. No. 13.) The motion is fully briefed. (Doc. Nos. 8, 13, 18.) Pursuant to Local Civil Rule 7.1.d.1, the Court finds the matter suitable for disposition without oral argument. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART**

1

Defendant's motion. The Court also **DENIES** as moot Defendant's motion to stay discovery pending resolution of the motion to compel arbitration. (Doc. No. 31.)

## I.    BACKGROUND

### A.    The Parties

Plaintiff Kohler is a customer of Whaleco, an e-commerce company that operates www.Temu.com ("Temu"), an online retailer that sells merchandise ranging from clothing, beauty and health products, home and kitchen products, sports goods, appliances, pet supplies, toys, and games. (Complaint, ("Compl."), Doc. No. 1, ¶ 1.) Temu operates both a website (the "Temu Website") and mobile application. (Mot. to Compel Arbitration, ("Mot."), Doc. No. 8-1, at 1.) In February 2024, Plaintiff purchased seven items through the Temu Website. (Compl. ¶¶ 22, 26; Mot. at 2.)

### B.    Plaintiff's Complaint

On May 28, 2024, Plaintiff filed a class action complaint against Whaleco, stemming from Whaleco allegedly misrepresenting the nature and amount of price discounts on products sold on the Temu Website. (Compl. ¶ 6.) Specifically, Plaintiff alleges Defendant lists fake, inflated "Reference Prices" for products, which are stricken-through, and which appear adjacent to Temu's much lower actual sales prices "to dupe consumers into believing they are buying main line retail products at reduced prices." (*Id.* ¶ 10.) The Complaint alleges, "[t]he Reference Prices listed on Defendant's Temu website do not represent a former price at all—much less a prevailing market price in the preceding three months." (*Id.*) The Complaint additionally alleges Plaintiff and class members "were misled into paying more for Defendant's products than they would have paid absent the Reference Prices." (*Id.* ¶ 65.) Plaintiff purports to represent a class defined as "[a]ll persons who, while in the State of California, purchased one or more products from Defendant's Temu website that were represented as discounted from a higher struck-through reference price from the period of February 24, 2020 to the present (the 'Class Period') and who have not received a refund or credit from their purchase(s)." (*Id.* ¶ 115.) Plaintiff brings claims against Defendant for violating California's Unfair Competition Law ("UCL"),

California's False Advertising Law ("FAL"), and California's Consumers Legal Remedies Act ("CLRA"). (*Id.* ¶¶ 128–56.)

### C.    Temu's Terms & Registration Interface

In February 2024, Temu required prospective buyers to create a Temu account and accept Temu's Terms of Use (Ex. A to Mot., ("Terms"), Doc. No. 8-3), prior to purchasing any products. (Declaration of Michael Trinh ("Trinh Decl."), Doc. No. 8-2, ¶¶ 3–4.) When Plaintiff registered for a Temu account on the Temu Website through the browser application on her iOS device, a registration prompt appeared (the "Registration Prompt") as shown below:



(Trinh Decl. ¶ 5, Figure 1.) The Registration Prompt has a white background, displays a text box for users to enter an email or phone number, and features an orange "Continue" button. (*Id.*) Under the orange "Continue" button, users have the alternative option to sign-

/ / /

/ / /

24-cv-00935-AJB-DEB

in using their credentials for an existing Google, Facebook, or Apple account.[1] Immediately below these registration sign-in options is a notice stating, "By continuing, you agree to our <u>Terms of Use</u> and <u>Privacy Policy</u>." (*Id.* ¶ 6.) The words, "Terms of Use" and "Privacy Policy," appear in bright blue, underlined font and are hyperlinked to Temu's Terms and Privacy Policy, which users could review before accepting them. (*Id.*) Michael Trinh, a Customer Service Manager at Whaleco since October 2022, checked Temu's database of account records which show that Plaintiff registered an account with Temu by clicking the "Continue with Google" button via an iOS device, and completed the registration process by submitting her Google account credentials.[2] (*Id.* ¶¶ 1, 11, 14.)

After a user clicks on the "Continue with Google" button, a user is presented with two more sign-in prompts that provide users an opportunity to review Temu's Terms, which are hyperlinked and appear in bright blue, underlined font. (*Id.* ¶ 8.) The two sign-in prompts appear as shown below:



(*Id.*, Figure 2.)

---

[1] The Trinh Declaration also stipulates that users can sign in using their pre-existing X (Twitter) account credentials. (Trinh Decl. ¶ 6 n.2.)

[2] Plaintiff takes issue with the admissibility of the Trinh Declaration and the basis for its statements. (Opposition ("Opp'n"), Doc. No. 13, at 14.) The Court considers the Trinh Declaration to assess whether Plaintiff assented to Temu's Terms. All remaining disputes about the sufficiency of the Declaration and the records on which it relies are delegated to the arbitrator. (Terms § 19.7.)



(*Id.*, Figure 3.) In sum, a user first creating a Temu account and opting to sign-in with their Google account credentials is presented with a prompt to view Temu's hyperlinked Terms a total of three times and must affirmatively press a "Continue" or "Next" button to proceed to Temu's Website.[3] (*Id.* ¶¶ 6–8.) Additionally, if a user logged out of their Temu account after registering, each time the user logs back in, the user is presented with the Registration Prompt and must assent to the Terms by pressing the "Continue" or "Next" buttons prior to making a purchase on the Temu Website. (*Id.* ¶ 10.)

### D. Temu's Terms of Use & Arbitration Provision

Temu's Terms set forth the rules and restrictions governing consumers' use of Temu's applications, products, services, and websites. (Terms at 2.) On the first page of the Terms, Section 1.5 states in relevant part:

> PLEASE BE AWARE THAT SECTION 19 BELOW CONTAINS PROVISIONS GOVERNING HOW DISPUTES BETWEEN YOU AND US WILL BE RESOLVED, INCLUDING WITHOUT LIMITATION, ANY DISPUTES THAT AROSE OR WERE ASSERTED PRIOR TO THE EFFECTIVE DATE OF THE TERMS. **SECTION 19 CONTAINS, AMONG OTHER THINGS, AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL**

---

[3] The Trinh Declaration represents, and Plaintiff does not dispute, that the hyperlinked "Terms of Service" in Figures 2 & 3 and the "Terms of Use" in Figure 1 all direct users to the same Terms. (*See* Trinh Decl. ¶ 8.)

24-cv-00935-AJB-DEB

**DISPUTES BETWEEN YOU AND US BE RESOLVED BY BINDING AND FINAL ARBITRATION**. UNLESS YOU OPT OUT OF THE AGREEMENT TO ARBITRATE WITHIN 30 DAYS OF THE EFFECTIVE DATE OF THE AGREEMENT: (1) YOU AND WE WILL ONLY BE PERMITTED TO PURSUE DISPUTES OR CLAIMS AND SEEK RELIEF AGAINST THE OTHER PARTY ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING AND EACH OF US WAIVES OUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION; AND (2) EACH OF US IS WAIVING OUR RIGHT TO PURSUE DISPUTES OR CLAIMS AND SEEK RELIEF IN A COURT OF LAW AND TO HAVE A JURY TRIAL. IN SOME COUNTRIES YOU MAY HAVE ADDITIONAL RIGHTS AND/OR ELEMENTS OF THE ARBITRATION AGREEMENT MAY NOT APPLY TO YOU AS REQUIRED BY LAW.

(*Id.* § 1.5 (emphasis in original); *see also id.* § 19.) Section 19, titled, "ARBITRATION AGREEMENT," (hereinafter, "Arbitration Agreement") stipulates that the parties:

agree that that any dispute, claim, or disagreement arising out of or relating in any way to your access to or use of the Services, any communications you receive, any products sold or distributed through the Services, or the Terms, including claims and disputes that arose between us before the effective date of the Terms (each, a "Dispute") will be resolved by binding arbitration . . . .

(*Id.* § 19.) Section 19.7, titled, "Authority of Arbitrator," (hereinafter, "Delegation Clause"), states:

The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement, except for the following: (1) all Disputes arising out of or relating to Section 19.4 [Waiver of Class and Other Non-Individualized Relief], including any claim that all or part of Section 19.4 is unenforceable, illegal, void or voidable, or that Section 19.4 has been breached, shall be decided by a court of competent jurisdiction and not by an arbitrator; (2) except as expressly contemplated in Section 19.9 [Batch Arbitration Provision], all Disputes about the payment of arbitration fees shall be decided only by a court of competent jurisdiction and not by an arbitrator; (3) all Disputes about whether either party has satisfied any condition precedent to arbitration shall be decided only by a court of competent

6

jurisdiction and not by an arbitrator; and (4) all Disputes about which version of the Arbitration Agreement applies shall be decided only by a court of competent jurisdiction and not by an arbitrator.

(*Id.* § 19.7.)

The Terms also include agreements to participate in an informal dispute resolution before arbitration, (*id.* §19.2), to "waive all rights to have any dispute be brought, heard, administered, resolved, or arbitrated on a class, collective, representative, or mass action basis," (*id.* §19.4, "Class Action Waiver"), and "in the event that there are twenty-five (25) or more individual Arbitration Notices of a substantially similar nature filed against [Whaleco] . . . within a thirty (30) day period, AAA (the American Arbitration Association) shall . . . administer the arbitration demands in batches of 100 Arbitration Notices per batch . . ." (*id.* §19.9, "Batch Arbitration Provision").

On February 24, 2024, Plaintiff purchased several products from the Temu Website on her phone. (Declaration of Kristen Kohler, ("Kohler Decl.,") Doc. No. 13-1, ¶ 2.) She does not recall seeing Temu's Terms and she did not clink on any hyperlinks. (*Id.* ¶ 3.) She also purports she was not aware she had created an account with Temu when she made her purchase. (*Id.* ¶ 5.)

Whaleco now moves to compel arbitration and to stay the action pending arbitration. (Mot. at 18.) This Order follows.

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015). Under the FAA, the court must, as a general matter, determine "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan*, 796 F.3d at 1130. These gateway issues, however, "can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" *Id.* (emphasis added) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

The party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). In determining whether a valid agreement exists, district courts apply applicable state law principles of contract formation. *See Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Under California law,[4] "the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).

## III.  DISCUSSION

Whaleco contends that on February 24, 2024, Plaintiff affirmatively agreed to Temu's Terms, which includes the Arbitration Agreement. (Mot. at 6.) Plaintiff asserts that insufficient evidence exists to establish that Plaintiff entered into an arbitration agreement with Temu, but even if Plaintiff had, the purported Arbitration Agreement is unconscionable, and therefore unenforceable. (Opp'n at 7.) The Court first considers whether a valid arbitration agreement exists, and whether Plaintiff was on notice of it.

---

[4] Both Defendant and Plaintiff cite California contract law as governing the motion to compel arbitration dispute. (*See generally* Mot.; Opp'n.) However, Temu's Terms contain a Choice of Law provision providing that the "Terms and any dispute of any sort that might arise between" the parties "be governed by the laws of the State of New York[.]" (*See* Terms § 18.3; Opp'n at 13 n.2.) Because "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term," the Court withholds deciding which State's law governs "because both California and New York law dictate the same outcome." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (internal quotation marks and citations omitted). For consistency with the parties' briefing, the Court applies California law in its Order.

1   Then, because the scope and validity of an arbitration agreement are gateway issues that

2   can be delegated to the arbitrator, the Court considers, as a threshold matter, whether there

3   is "clear and unmistakable" evidence the parties intended to delegate the arbitrability

4   question to an arbitrator.

5           **E.      Temu's Sign-In Wrap Agreement**

6           "To form a contract under California law, there 'must be actual or constructive notice

7   of the agreement and the parties must manifest mutual assent.'" *Keebaugh v. Warner Bros.*

8   *Ent. Inc.*, 100 F.4th 1005, 1013–14 (9th Cir. 2024) (quoting *Oberstein v. Live Nation Ent.,*

9   *Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023)). "In California, internet contracts are classified

10  by the way in which the user purportedly gives their assent to be bound by the associated

11  terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps." *Id.* at 1014 (internal

12  quotation marks and citation omitted). Here, because Temu requires individuals to press

13  "Continue" before they can purchase goods on Temu's Website, but does not require users

14  to review Temu's Terms and confirm their assent before gaining access, the agreement is

15  a sign-in wrap agreement. *See id.* (characterizing Game of Thrones: Conquest game as

16  having a sign-in wrap agreement where "users are required to advance through a sign-in

17  screen which states, 'By tapping 'Play,' I agree to the Terms of Service'"); *see also Silva v.*

18  *WhaleCo, Inc.*, No. 24-CV-02890-SK, 2024 WL 4487421, at *3 (N.D. Cal. Oct. 10, 2024)

19  (describing the Temu Website's "'sign-in wrap' process").

20          Plaintiff disclaims having actual notice of an arbitration agreement with Temu.

21  (Kohler Decl. ¶ 8.) The Court proceeds by considering whether she had constructive notice.

22  "Under California law, courts have found sign-in wrap agreements based on inquiry notice

23  enforceable when: '(1) the website provides reasonably conspicuous notice of the terms to

24  which the consumer will be bound; and (2) the consumer takes some action, such as

25  clicking a button or checking a box, that unambiguously manifests his or her assent to those

26  terms.'" *Cullors v. Cerebral, Inc.*, No. 23-55594, 2024 WL 3385530, at *1 (9th Cir. July

27  12, 2024) (quoting *Keebaugh*, 100 F.4th at 1013–14).

28

1    Both factors are met here. First, the format and font of Temu's Registration Prompt

2    resembles the enforceable prompt in *Oberstein v. Live Nation Entertainment,* 60 F.4th 505

3    (9th Cir. 2023). There, the Ninth Circuit found that a website provided constructive notice

4    of the terms to which the consumer would be bound where "crucially, the 'Terms of Use'

5    hyperlink [wa]s conspicuously distinguished from the surrounding text in bright blue font,

6    making its presence readily apparent." *Oberstein*, 60 F.4th 505 at 516; *see also Berman v.*

7    *Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) ("Customary design

8    elements denoting the existence of a hyperlink include the use of a contrasting font color

9    (typically blue) and the use of all capital letters, both of which can alert a user that the

10   particular text differs from other plain text in that it provides a clickable pathway to another

11   webpage.") Temu's hyperlinked Terms of Use and Privacy Policy are capitalized, legible,

12   and appear in bright blue, underlined font, putting Temu customers on constructive notice

13   that they would be bound by the hyperlinked policies. (*See* Trinh Decl. ¶ 5.) Additionally,

14   as in *Oberstein,* because Temu's prompt notifies consumers that "By continuing, you agree

15   to our Terms of Use . . . ," (*id.*), "a reasonable user would have seen the notice and been

16   able to locate the Terms via hyperlink." *Oberstein*, 60 F.4th 505 at 516. Indeed, "[a]

17   comparison of Temu's notice with the notices at issue in *Oberstein* and *Keebaugh* reveals

18   that Temu's notice clearly passes the test." *Silva*, No. 24-CV-02890-SK, 2024 WL

19   4487421, at *4.[5]

20   "The second part of the test—whether the user takes some action that unambiguously

21   manifests assent—is relatively straightforward." *Oberstein*, 60 F.4th at 515. "A user's click

22   of a button can be construed as an unambiguous manifestation of assent only if the user is

23   explicitly advised that the act of clicking will constitute assent to the terms and conditions

---

25   [5] Temu's sign-in and registration prompts in *Silva*, 2024 WL 4487421, at *3, differ slightly from Temu's

26   Registration Prompt here. However, in both *Silva* and here, "[t]he language of 'Terms of Use and Privacy
     Policy' is large enough to read, and it is capitalized and underlined in blue, which stands out from the

27   surrounding text. . . . And like the notice at issue in *Oberstein*, Temu users encounter the 'Terms of Use
     and Privacy Policy' more than once during the registration process." *Silva,* No. 24-CV-02890-SK, 2024

28   WL 4487421, at *4; (*see also* Trinh Decl. ¶¶ 5, 8).

24-cv-00935-AJB-DEB

of an agreement." *Berman*, 30 F.4th at 857. Here, Temu's consumers must affirmatively click the "Continue" button to assent to Temu's Terms, satisfying the second part of the test. (*Id*. ¶ 6.) Plaintiff asserts that she did not assent because she does not recall seeing Temu's Terms and did not click on any hyperlinks. (Kohler Decl. ¶ 3.) Plaintiff's statement does not change the analysis. "Basic principles of contract law provide that '[i]f a party could get out of a contract by arguing that he did not recall making it, contracts would be meaningless.'" *Silva*, No. 24-CV-02890-SK, 2024 WL 4487421, at *5. Furthermore, Plaintiff does not dispute the appearance of Temu's Registration Prompt or that she affirmatively pressed the "Continue with Google" button prior to making purchases on Temu's Website. (*See generally* Kohler Decl.) The Court finds that Plaintiff unambiguously assented to Temu's Terms by pressing the "Continue" button multiple times prior to purchasing items on Temu's Website. *See, e.g.*, *Oberstein*, 60 F.4th at 515–17 (user unambiguously manifested assent to Ticketmaster and Live Nation's terms of use where user was "presented with a confirmation button above which text informs the user that, by clicking on this button, 'you agree to our Terms of Use'"); *see also Keebaugh,* 100 F.4th 1005 at 1009, 1021 (users manifested assent to game's terms of service by tapping a "Play" button located on the app's sign-in screen).

## F.    Requirement to Arbitrate

Because Plaintiff assented to Temu's Terms, the Court considers whether Plaintiff's claims are subject to the Arbitration Agreement. Section 19.1 of the Terms, titled, "Applicability of Arbitration Agreement," states:

> Subject to the terms of this Arbitration Agreement, you and we agree that any dispute, claim, or disagreement arising out of or relating in any way to your access to or use of the Services, any communications you receive, any products sold or distributed through the Services, or the Terms, including claims and disputes that arose between us before the effective date of the Terms (each, a "Dispute") will be resolved by binding arbitration . . . .

(Terms § 19.1.) "Services" is defined to include Temu's "applications, products, services and websites." (*Id.* at 2.) Plaintiff's UCL, FAL, and CLRA claims center around Plaintiff's

allegations that Temu's advertising using strikethrough reference prices purposefully misled consumers, (Compl. ¶¶ 128–56), and therefore relate to a dispute arising out of Plaintiff's "access to [and] use of [Temu's] Services." (*See id.*) The Court finds that all of Plaintiffs' claims are subject to the Arbitration Agreement.

### G.   Delegation Clause

Defendants argue pursuant to the Delegation Clause, (Terms § 19.7), any challenges to the Arbitration Agreement must be delegated to the arbitrator. (Mot. at 18–20.) Plaintiff responds that Temu's Delegation Clause is both procedurally and substantively unconscionable and therefore cannot be enforced. (Opp'n at 21–22.)

The Court first considers whether the Delegation Clause clearly and unmistakably requires the arbitrator to decide gateway arbitrability issues. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.") The Court then addresses Plaintiff's arguments and whether the Delegation Clause is unenforceable due to unconscionability. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210–211 (9th Cir. 2016).

### 1.   Disputes of Unconscionability Delegated to Arbitrator

Temu's Delegation Clause provides that "[t]he arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement[.]" (Terms § 19.7.) Temu's Delegation Clause is exceedingly similar to the delegation clauses at issue in *Mohamed* and *Pearl v. Coinbase Global, Inc.*, No. 22-CV-03561-MMC, 2023 WL 1769190 (N.D. Cal. Feb. 3, 2023). *See Mohamed*, 848 F.3d at 1209 (arbitration agreement delegating "enforceability, revocability, or validity of the Arbitration Provision or any portion of the Arbitration Provision" to an arbitrator "clearly and unmistakably indicates the parties' intent for the arbitrators to decide the threshold question of arbitrability") (internal quotation marks and citations omitted); *Pearl*,

2023 WL 1769190, at *3 (arbitration agreement providing that "[t]he arbitrator shall have exclusive authority to resolve any Dispute, including without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement . . . constitutes clear and unmistakable evidence that the threshold issue of arbitrability is delegated to an arbitrator"). As was the case in *Mohamed* and *Pearl*, the language in Temu's Delegation Clause demonstrates the parties' clear and unmistakable intent for the issue of arbitrability to be delegated to the arbitrator.

### 2.    Unconscionability of Delegation Clause

The Court next considers whether the Delegation Clause is enforceable. "Under California law, a contract must be both procedurally and substantively unconscionable to be rendered invalid." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). Furthermore, "California law utilizes a sliding scale to determine unconscionability— greater substantive unconscionability may compensate for lesser procedural unconscionability," and vise versa. *Id.* The party opposing arbitration bears the burden of proving unconscionability. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021). "A party is ... permitted under *Rent-A-Center* to challenge the enforceability of a delegation clause by explaining how 'unrelated' provisions make the delegation unconscionable." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680–81 (9th Cir. 2024) (quoting *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023)). "[I]f a party cites provisions outside of the delegation clause in making an unconscionability challenge, it must explain how those provisions make *the fact of an arbitrator deciding arbitrability* unconscionable." *Holley-Gallegly*, 74 F.4th at 1002 (emphasis in original).

### i.  Procedural Unconscionability

Procedural unconscionability measures the degree of "oppression" or "surprise" during contract formation. *See Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001). "Oppression arises from an inequality of bargaining power that results in

no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Id.* Plaintiff asserts that the Delegation Clause is procedurally unconscionable because it is contained within a contract of adhesion, "is buried in section 19" of Temu's Terms, and includes "many exceptions." (Opp'n at 21–22.) The Court addresses each of Plaintiff's arguments and finds that Plaintiff fails to demonstrate that the Delegation Clause is procedurally unconscionable.

First, because Temu's Arbitration Agreement enables consumers to opt out through written notice within thirty days, (*see* Terms § 19.10, "30-Day Right to Opt Out"), Temu's Arbitration Agreement is not adhesive. *See Mohamed*, 848 F.3d at 1211 ("[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it."); *see also Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) ("[T]his case lacks the necessary element of procedural unconscionability. [Employee] was not presented with a contract of adhesion because he was given the opportunity to opt-out of the Circuit City arbitration program by mailing in a simple one-page form [within thirty days].") In *Mohamed,* the Ninth Circuit upheld an arbitration agreement that allowed Uber drivers to opt out of an arbitration agreement "within 30 days either in person or by overnight delivery service." 848 F.3d at 1211. Here, opting out by written notice is less onerous than opting out "in person or by overnight delivery service." *Id.* Accordingly, Plaintiff had a sufficient opportunity to opt out of the arbitration agreement. Furthermore, Temu customers' 30-Day Right to Opt Out notably differs from the procedurally unconscionable mass arbitration protocol in *Heckman v. Live Nation,* where Ticketmaster customers had "no right to opt out of the batched cases." *Heckman*, 120 F.4th at 684. Plaintiff's argument that the Delegation Clause is unconscionable because it is found within a contract of adhesion therefore lacks merit.

Plaintiff next takes issue with the placement of the Arbitration Agreement in Section 19 of Temu's Terms, arguing that because the Delegation Clause is "buried," it is "paradigmatic of unfair surprise as it involves 'minimal notice.'" (Opp'n at 22.) Plaintiff

14

analogizes the placement of Temu's Arbitration Agreement to the arbitration rules in *Heckman,* where the Ninth Circuit found that despite being "printed in a legible font and clearly linked to the Terms on Ticketmaster's website," the arbitration rules were "riddled with typos," and "so dense, convoluted and internally contradictory to be borderline unintelligible," forming "the final element of surprise." *Heckman,* 120 F.4th at 677–78, 683. That is not the case here. While the Arbitration Agreement itself does not appear until Section 19 on page 9 of Temu's Terms, Section 1.5 on the first page of Temu's Terms states in bolded, capitalized font, "SECTION 19 CONTAINS, AMONG OTHER THINGS, AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND US BE RESOLVED BY BINDING AND FINAL ARBITRATION." (Terms § 1.5.) In all capitals, un-bolded font, Section 1.5 also notifies users of the opportunity to opt out within thirty days. (*Id.*) The first page of Temu's Terms therefore explicitly notifies users of the Arbitration Agreement, as well as the opportunity to opt-out, mitigating Plaintiff's concern of any undue surprise.

In supplemental briefing, Plaintiff further argues that the Arbitration Agreement unconscionably contains "contradictory and misleading terms" by prohibiting disputes brought on a "mass action basis" in the Class Action Waiver, (Terms § 19.4), but also requiring "batch arbitration" if twenty-five or more individual arbitration notices of a similar nature are issued, as outlined in the Batch Arbitration Provision, (*id.* § 19.9). (*See* Doc. No. 33 at 3.) To the extent these provisions are contradictory, Plaintiff does not satisfy her burden of explaining how the Class Action Waiver and Batch Arbitration Provision make the fact of an arbitrator deciding arbitrability unconscionable, or why an arbitrator cannot determine if these two provisions taken together are unconscionable. *See Holley-Gallegly*, 74 F.4th at 1002. This case differs from *Heckman,* where the Ninth Circuit found that Ticketmaster's Terms were "flatly inconsistent" with the separately linked arbitration rules published by "a newly formed arbitration company," to which Ticketmaster's Terms bound "any person even browsing the site," and which did not allow customers to request removal from the batch arbitration until after the arbitration proceeding and settlement

1    conference. *Heckman,* 120 F.4th at 683. By contrast, here, Plaintiff had thirty days after

2    creating an account to opt out of the Class Action Waiver and Batch Arbitration Provision,

3    but declined to do so. (*See* Trinh Decl. ¶ 16, Terms §§ 1.5, 19.10.)

4          Finally, Plaintiff does not provide any authority in support of her argument that the

5    exceptions in the Delegation Clause indicate procedural unconscionability. The court in

6    *Pearl v. Coinbase Global, Inc.* considered an extremely similar delegation clause to the

7    Delegation Clause at issue here, which also had four enumerated exceptions for disputes

8    related to a class action waiver, payment of arbitration fees, satisfaction of conditions

9    precedent, and which version of the arbitration agreement applied. *See Pearl,* 2023 WL

10   1769190, at *2. The *Pearl* court did not identify any authority placing a limit on the number

11   of allowable exceptions in a delegation clause and found the delegation clause in the

12   Coinbase arbitration agreement enforceable. *Id.* at *8. Similarly here, Plaintiff has not

13   carried her burden of demonstrating why the exceptions enhance or signify procedural

14   unconscionability, *see Lim*, 8 F.4th 992 at 999. In sum, the Court does not find the

15   Delegation Clause procedurally unconscionable.

16          **ii.  Substantive Unconscionability**

17         "Substantive unconscionability examines the fairness of a contract's terms." *Lim*, 8

18   F.4th at 1001 (quoting *OTO, L.L.C. v. Kho,* 8 Cal. 5th 111, 129 (2019)). "[T]he standard

19   for substantive unconscionability—the requisite degree of unfairness beyond merely a bad

20   bargain—must be as rigorous and demanding for arbitration clauses as for any contract

21   clause." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 912 (2015).

22         Plaintiff argues that Temu's Delegation Clause and the entire arbitration agreement

23   are substantively unconscionable principally due to one section—Section 19.9, the Batch

24   Arbitration Provision. (Opp'n at 24–28.) The Batch Arbitration Provision states:

25        [I]n the event that there are twenty-five (25) or more individual Arbitration
     Notices of a substantially similar nature filed against us by or with the

26        assistance of the same law firm, group of law firms, or organizations, within
     a thirty (30) day period, AAA shall ... administer the arbitration demands in

27        batches of 100 Arbitration Notices per batch ... concurrently."

28

24-cv-00935-AJB-DEB

(Terms § 19.9.) Plaintiff asserts that the Batch Arbitration Provision will delay the outcome of plaintiffs' claims, will result in a chilling effect of deterring consumers from pursuing their claims, and lacks mutuality because "[i]t is difficult to imagine why Temu would assert numerous claims against a consumer, let alone 25 claims." (Opp'n at 25.)

The Court is not persuaded. The cases cited by Plaintiff in support of the proposition that mass arbitration provisions are unconscionable are distinguishable. In *Heckman v. Live Nation Entertainment, Inc.*, *MacClelland v. Cellco Partnership*, 609 F.Supp.3d 1024 (N.D. Cal. 2022), and *Pandolfi v. AviaGames, Inc.*, No. 23-CV-05971-EMC, 2024 WL 4051754 (N.D. Cal. Sept. 4, 2024), the mass arbitration provisions found to be unconscionable all involved bellwether proceedings, which are not present in Temu's Arbitration Agreement.

In *Heckman,* the Ninth Circuit found the mass arbitration provision substantively unconscionable as violating basic principles of due process because "[i]f the arbitrator in the bellwether cases holds that the delegation clause is valid, that holding is binding on the plaintiffs in all of the batched non-bellwether cases," despite a plaintiff in a non-bellwether case having "no notice of the bellwether cases and no opportunity to be heard in those cases." *Heckman,* 120 F.4th at 684. By contrast, the Batch Arbitration Provision at issue here does not mention bellwether proceedings, (Terms § 19.9), and Plaintiff has not raised any concern about a lack of notice or opportunity to be heard in the batch arbitration proceedings, (*see generally* Opp'n).

The *MacClelland* and *Pandolfi* courts found it unconscionable to delay arbitration of non-bellwether cases until the resolution of an initial tranche of bellwether cases. *See MacClelland*, 609 F.Supp.3d at 1040 ("[T]he mass arbitration provision. . . sets a cap on the number of arbitrations against Verizon that may proceed at one time [and] . . . functions to delay arbitration of cases until each preceding tranche of 10 cases is adjudicated."); *Pandolfi*, No. 23-CV-05971-EMC, 2024 WL 4051754, at *6 ("Because the bellwether provision allows for arbitration of only twenty cases at a time – *and* with the default of only one case being assigned to each arbitrator . . . there would likely be delay in resolution of the players' claims.") Here, Temu's Batch Provision stipulates that batches of like claims

1    be arbitrated "concurrently." (Terms § 19.9.) The requirement that batches be arbitrated

2    concurrently alleviates the concern that adjudication of a litigant's claims would be delayed

3    until prior batches of claims are arbitrated. *See Silva*, No. 24-CV-02890-SK, 2024 WL

4    4487421, at *5 ("As Plaintiff has not offered any authority or convincing argument

5    suggesting that *concurrent* claim batching results in unconscionable delay, he has not

6    carried his burden of demonstrating unconscionability.")

7        Because Plaintiff cannot show why Temu's Batch Arbitration Provision would result

8    in delay, or why an arbitrator could not address Plaintiff's asymmetry concerns, Plaintiff

9    fails to satisfy the Ninth Circuit's mandate in *Holley-Gallegly v. TA Operating, LLC*, to

10   explain how the Batch Arbitration Provision, which is outside of the Delegation Clause,

11   "make[s] the fact of an arbitrator deciding arbitrability unconscionable." 74 F.4th 997,

12   1002. The Delegation Clause is not unconscionable.

13       **H.    Waiver of Non-Individualized Relief**

14       Plaintiff next argues, and Defendant does not dispute, that the Arbitration

15   Agreement's prohibition of an award of public injunctive relief, (Terms § 19.4), is void

16   under California law. (Opp'n at 29–30; Reply at 10–11.) Because the Delegation Clause

17   excludes "all Disputes arising out of or relating to Section 19.4 [Waiver of Class and Other

18   Non-Individualized Relief], including any claim that all or part of Section 19.4 is

19   unenforceable, illegal, void or voidable," (Terms § 19.7), the Court considers the parties

20   arguments rather than delegating them to an arbitrator.

21       An "arbitration provision is invalid and unenforceable [if] it waives [a] right to seek

22   public injunctive relief in any forum." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 954 (2017);

23   *see also Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 828 (9th Cir. 2019). By contrast,

24   "[c]ontracts permitting public injunctive relief in some fora but not others do not violate

25   *McGill.*" *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 478 (9th Cir. 2024). Here,

26   Temu's Arbitration Agreement requires Temu customers to resolve their disputes in

27   arbitration rather than in court, (Terms § 19.1), and Section 19.4 stipulates that "the

28   arbitrator may award declaratory or injunctive relief only in favor of the individual party

18

seeking relief and only to the extent necessary to provide relief warranted by the party's individual claim," (*id.* § 19.4). Because the Arbitration Agreement prohibits Temu customers from seeking public injunctive relief in any fora, it improperly runs afoul of *McGill* and is unenforceable. *See McGill*, 2 Cal. 5th at 954; *see also Keebaugh*, 100 F.4th at 1022 (finding terms of service that require arbitration of all claims and limiting the arbitrator's ability to award relief "only in favor of the individual party seeking relief" as violating *McGill* and unenforceable in California).

## I.  Severability of Claims and Remedies

Given that *McGill* applies and the waiver of non-individualized relief is unenforceable, the Court must determine what components, if any, of the Complaint should be severed from arbitration. Plaintiff argues the Arbitration Agreement's public injunctive relief waiver, (Terms § 19.4), coupled with its forum selection clause, (*id.* § 18.4) renders the entire Arbitration Agreement unconscionable and unenforceable. (Opp'n at 30.) Defendant asserts that "Plaintiff's claim for public injunctive relief must be severed while her other claims are arbitrated." (Reply at 10.) The Court first considers the severance clause found in Section 19.4, and then evaluates the forum selection clause in Section 18.4.

Section 19.4 of the Arbitration Agreement includes a severance clause, (hereinafter, "Severance Clause"), which states in relevant part:

 [I]f a final decision, not subject to any further appeal or recourse, determines that the limitations of this Section are invalid or unenforceable as to a particular claim or request for relief (such as a request for public injunctive relief), you and we agree that that particular claim or request for relief (and only that particular claim or request for relief) shall be severed from the arbitration and may be litigated only in the courts provided for under Section 18.4.

(Terms § 19.4.) Here, Plaintiff's request for public injunctive relief as a remedy for her UCL, FAL, and CLRA claims, (Compl. ¶¶ 18, 124), triggers the Severance Clause. (*See* Terms § 19.4 (any claim or request for relief found invalid or unenforceable "such as a request for public injunctive relief . . . shall be severed from the arbitration").) "Parties are welcome to agree to split decisionmaking between a court and an arbitrator" by "requiring

the arbitrator to adjudicate liability first" and "carv[ing] out only the potential public injunctive remedy" for separate consideration by the court. *See Blair*, 928 F.3d at 831. To do so, however, a severance clause must convey an intent to consider liability separate from remedies. *Id.* Because the Severance Clause expressly permits the severability of either a "particular claim" or "request for relief," (Terms § 19.4), the Arbitration Agreement requires the Court to sever Plaintiff's request for public injunctive relief from an arbitrator's adjudication of Defendant's liability. *See Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013) (permitting Plaintiff to "return to district court to seek their public injunctive relief" upon an arbitrator's finding of liability).

## J. Forum Selection Clause

The Court next considers the forum selection clause in Section 18.4, (hereinafter, "Forum Selection Clause"). The Delegation Clause excludes "all Disputes arising out of or relating to Section 19.4, including any claim that all or part of Section 19.4 is unenforceable, illegal, void or voidable . . .". (Terms § 19.7.) Section 19.4 stipulates that any "claim or request for relief . . . severed from the arbitration . . . may be litigated only in the courts provided for under Section 18.4." (*Id.* § 19.4.) Because Plaintiff challenges the portion of Section 19.4 incorporating the Forum Selection Clause, the Court finds it appropriate to initially consider Plaintiff's challenge rather than delegate the challenge in the first instance to an arbitrator. The Forum Selection Clause states:

> Any dispute of any sort between you and us that arises out of or in connection with the Services and is not subject to arbitration or eligible for small claims action, shall be decided exclusively by a court of competent jurisdiction located in New York, New York. You hereby consent to, and waive all defense of lack of personal jurisdiction and forum non conveniens with respect to, venue and jurisdiction in such courts.

(Terms § 18.4.)

Plaintiff argues that requiring her to litigate any severed public injunctive relief claims in New York pursuant to the Forum Selection Clause is "entirely unreasonable" and is "further indicia of an unconscionable agreement under California law." (Opp'n at 30.)

Defendant responds that Plaintiff fails to make a strong showing that the Forum Selection Clause is invalid by only citing to authority invalidating arbitration provisions requiring arbitration in a particular forum, rather than litigation in a specific forum. (Reply at 11.) Defendant further asserts that in any event, Temu is not presently seeking to enforce the Forum Selection Clause or seek transfer. (*Id.*) The Court agrees with Defendant that Plaintiff has not met her burden to demonstrate substantive unconscionability of the entire Arbitration Agreement based on the Terms' Forum Selection Clause. *See Pinnacle Museum Tower Assn.*, 55 Cal. 4th at 236; *see also Lee v. Fisher*, 70 F.4th 1129, 1143 (9th Cir. 2023). Plaintiff's argument is also premature.[6] Accordingly, the Court severs Plaintiff's request for public injunctive relief from an arbitrator's adjudication of Defendant's liability. If an arbitrator determines that Defendant is liable under the UCL, FAL, or CLRA, Plaintiff may pursue public injunctive relief as a remedy in court.

### K. Informal Dispute Resolution

Plaintiff additionally argues that the Arbitration Agreement's pre-arbitration procedures outlined in Section 19.2, titled "Informal Dispute Resolution," are unconscionable. (*See* Opp'n at 28.) Defendant responds that Plaintiff's unconscionability challenge is delegated to the arbitrator and that the Informal Dispute Resolution provision is fair, reasonable, and commonplace. (Reply at 6, 9.) The Delegation Clause excludes "all Disputes about whether either party has satisfied any condition precedent to arbitration" as outlined in Section 19.2, but does not exclude disputes about the enforceability or conscionability of the Informal Dispute Resolution provision itself. (*See* Terms § 19.7.) Neither party is challenging the other's satisfaction of a condition precedent to arbitration. Accordingly, Plaintiff has not raised a challenge "directed specifically to the validity of the delegation clause," and Plaintiff's challenge regarding the conscionability of the Informal Dispute Resolution provision "raises exactly the type of threshold arbitrability issue that

---

[6] Plaintiff's challenge to the Forum Selection Clause would be more properly raised in response to a motion to transfer venue and may be raised if such a motion is before the Court at a future date.

the parties have delegated to the arbitrator[.]" *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030, 1034 (9th Cir. 2022). Pursuant to the Delegation Clause, (Terms § 19.7), the Court delegates any disputes about the unconscionability of the Informal Dispute Resolution provision to an arbitrator.

## L.  Class Action Waiver

Defendant's final argument is that the Class Action Waiver in Section 19.4 is enforceable under both the FAA and California law, and therefore Plaintiff must proceed in arbitration on an individual basis. (Mot. at 20 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011)).) Plaintiff asserts that if the Arbitration Agreement is found unenforceable, once the Class Action Waiver is "divorced from an arbitration provision," it should also be found unconscionable and unenforceable under California law. (Opp'n at 31.) Because the Delegation Clause explicitly excludes "all Disputes arising out of or relating to Section 19.4 [Waiver of Class and Other Non-Individualized Relief]," (Terms §19.17), the Court considers the parties' arguments.

In *Concepcion,* the Supreme Court held that the FAA preempts California's judicial rule that classified "most collective-arbitration waivers in consumer contracts as unconscionable" because it posed an "obstacle" to the FAA's objectives. *Concepcion*, 563 U.S. at 340, 352. The Ninth Circuit has "interpreted *Concepcion* as foreclosing any argument that a class action waiver, by itself, is unconscionable under state law or that an arbitration agreement is unconscionable solely because it contains a class action waiver." *Carter v. Rent-A-Ctr., Inc.,* 718 F. App'x 502, 504 (9th Cir. 2017); *see also Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) ("Plaintiffs claimed below that the Note's ban on class arbitration is unconscionable under California law, but that argument is now expressly foreclosed by *Concepcion* [.]")

For the reasons discussed above, the Court finds that the parties entered into a valid agreement to arbitrate, so the Class Action Waiver is not divorced from the Arbitration Agreement. Additionally, as previously stated, the Class Action Waiver is not procedurally unconscionable because Plaintiff had thirty days to opt out and declined to do so. (Terms

§ 19.10; Trinh Decl. ¶ 16.) Plaintiff does not satisfy her burden of showing why the Class Action Waiver is unconscionable. Therefore, Plaintiff must proceed in arbitration on an individual basis unless the arbitrator finds that Section 19.9, the Batch Arbitration Provision, is applicable and enforceable.

***

The Court concludes that the Terms require the Court to sever the availability of the public injunction remedy. All remaining claims are compelled to arbitration. The Court stays the public injunction determination pending the arbitrator's determination of liability on Plaintiff's claims.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, the Court **GRANTS** Defendant's motion to compel arbitration for all claims and prayers for relief, with the exception of Plaintiff's request for a public injunctive relief. (Doc. No. 8.) Pursuant to 9 U.S.C. § 3, the action between Plaintiff and Whaleco is **STAYED** pending arbitration. The Court **DENIES** as moot Defendant's motion to stay discovery pending resolution of the motion to compel arbitration. (Doc. No. 31.)

**IT IS SO ORDERED**.

Dated:  November 25, 2024

Hon. Anthony J. Battaglia
United States District Judge

24-cv-00935-AJB-DEB